[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter was first brought to the court pursuant to summons and complaint, which complaint was dated May 6, 1999 and returnable May 25, 1999, in which complaint the plaintiff petitioner sought in the prayer for relief a dissolution of the marriage, joint legal custody, primary residence with plaintiff subject to defendant's reasonable rights to visitation, joint legal custody pendente lite, primary residence with plaintiff subject to defendant's reasonable rights of visitation, alimony, alimony pendente lite, an allowance to prosecute, transfer of all defendant's equity in the marital estate to the plaintiff, counsel fees, any and all such other further relief as the court deems just and equitable.
Accompanying the complaint was a pendente lite motion for joint custody and alimony with order attached, the usual automatic orders and the return of the sheriff verifying service on the defendant.
On May 25, 1999 the defendant filed a pro se appearance.
On June 29, 1999 the plaintiff filed a motion for temporary alimony.
On June 29, 1999 the plaintiff filed a motion for sole custody and specific visitation pendente lite.
On June 29, 1999 the plaintiff filed a motion for health insurance pendente lite and on the same date a motion for court order as concerns proceeds realized from the sale of the marital home. A motion for counsel fees pendente lite was filed by the plaintiff on June 29, 1999. Another motion for court order was filed June 29, 1999 having to do with matters of support and matters pending in the support enforcement court and as concerns the foregoing motions just mentioned above, the same resulted in an order of the court on July 12, 1999 whereby orders should enter in accordance with an agreement of the parties file stamped July 12, 1999 and signed by counsel of record and that the order should enter in accordance with that agreement. That agreement covered matters as to custody, visitation, prohibition as to consumption of spirits and matters pertaining to counsel holding the escrow funds all as noted in the file and ordered and approved by the court, Mihalakos, J. CT Page 3313
There is in the file under date of July 12, 1999 a document entitled "Consent to Representation" wherein the defendant approved the representation for the plaintiff wife by counsel of record having in mind that the same counsel on an earlier occasion had represented both the plaintiff and the defendant incident to matters pertaining to problems with one of the minor children issue of the marriage.
On August 9, 1999 a motion for fee waiver as concerns the Parenting Education Program was filed with the financial affidavit attached thereto. There is no indication as to whether or not that motion was granted.
There is in the file an indication by virtue of a document filed August 27, 1999 that the defendant did not successfully complete the Parenting Education Program; the form indicating that the defendant failed to appear incident thereto.
On October 19, 1999 plaintiff's counsel filed a motion for release of escrow funds as concerns monies due the Old Lyme Daycare facility. There is no indication as to whether or not that motion was acted upon. The escrow funds remained until time of trial.
On October 27, 1999 the defendant appeared by counsel.
On October 27, 1999 the defendant by counsel filed an answer to the complaint and a cross complaint and in the cross complaint requested a dissolution of the marriage, joint legal custody, joint legal custody pendente lite, specific rights of visitation to the non-residential parent, alimony, alimony pendente lite, a fair and equitable distribution of all real and personal property pursuant to Connecticut General Statutes (C.G.S.) § 46b-81 et. seq., allocation of debt, an allowance to defend, any other and further relief the court deems appropriate.
On October 27, 1999 the defendant filed a pendente lite motion to modify child support and on November 29, 1999 the court, Kenefick, J., accepted a stipulation dated November 28, 1999 as concerns the foregoing motion. The stipulation being to the following effect: "Any pendente lite modification regarding support shall be heard by the Magistrate Division of the Superior Court." The pending motion regarding modification shall be retroactive to November 15, 1999 and shall be reclaimed to appear on the magistrate's list.
On February 21, 2001 and February 22, 2001 the plaintiff and the defendant with their respective counsel appeared before the court and the matter was heard to a conclusion. CT Page 3314
The court makes the following findings of fact:
The plaintiff and the defendant were joined in marriage on May 3, 1985 in Old Lyme.
The plaintiff's maiden name was Giordano.
Both of the parties have resided in the State of Connecticut for more than one year prior to the commencement of this petition for dissolution.
The plaintiff and the defendant have two minor children issue of this marriage whose names and dates of birth are: Heather Elizabeth Mitchell born on August 25, 1987 and Eric Steven Mitchell born on August 20, 1989.
No other minor children have been born to the plaintiff since the date of the marriage of the parties.
The complaint recites that neither party to this petition are the recipients of State or federal welfare assistance; however, the court notes in the cross complaint filed by the defendant dated October 9, 1999 that a representation is made that the plaintiff was in the past the recipient of welfare assistance and a copy of the cross complaint indicates that a copy of said cross complaint was forwarded to the Office of the Attorney General, Welfare, of the state.
The marriage of the parties has broken down irretrievably with no reasonable prospect for reconciliation.
The plaintiff's present address is 305 Mile Creek Road in the Town of Old Lyme where the plaintiff resides in a single-family, year-round home with the two children. The premises are rented from the landlord.
When the parties were first joined in marriage, they resided on High Street in the Town of Mystic.
The plaintiff and the defendant knew each other for seven or eight years before they were joined in marriage.
The defendant was employed at Electric Boat when the parties were married and the plaintiff at that time was working in a bank. The plaintiff on later dates was employed at Shop Rite in the Town of Groton and then at the Mystic Color Lab. CT Page 3315
While living in Mystic the plaintiff and the defendant owned a mobile home and rented the lot on which it was situated. They were there for five years and the two children were born in Mystic.
The early years of the marriage were characterized by the plaintiff as happy.
At the time of the marriage, as noted, the defendant was employed by Electric Boat in the capacity of a first class grinder. Subsequently the mobile home in Mystic was sold and the parties moved to the Town of Ledyard. Subsequently the parties found a place in the Town of Old Lyme which they rented. The residency in Old Lyme commenced in 1991.
While residing in the Town of Old Lyme, one or both of the children were diagnosed as being affected with lead poisoning. This presumably, according to the testimony, occasioned by particles in the air in the residence in which they were living. The child Eric was 10 months old at that time. Incident to a routine blood check at a facility in Old Lyme, it was determined that both of the children had elevated levels of lead poisoning. The child Eric was subsequently diagnosed with having sustained some brain damage. The child Eric has by virtue of the lead poisoning experienced a delay in his moving along in the educational system which was described as being between two and three years behind other children in this system. The testimony was to the effect that the child Eric's speech is slow, that he is hyperactive.
The plaintiff has worked at a local laundromat as a part-time job.
The home in which the lead condition existed while they were tenants, it was testified, was subsequently condemned.
The child Eric was described by the plaintiff by virtue of the problems he has experienced as being "a one command child".
Problems in the marriage arose out of the children's hyperactivity. The testimony was to the effect that the child Eric is learning disabled. The child is now in the fifth grade and has special needs.
After leaving the aforementioned residence, the plaintiff and the defendant engaged in the building of a home. This took about two years. During this period of time the parties lived with the parents of the plaintiff and this was on a rent-free basis.
The construction loan for the building of the new home was with the Essex Savings Bank. CT Page 3316
On occasion the plaintiff's father helped out with regard to financial issues and the testimony was to the effect that his financial assistance extended to helping provide as much as $12,000.00.
The new residence was occupied by the parties in 1993. During this interval of time the relationship between the plaintiff and the defendant was described as up and down.
The defendant worked on the third shift at Electric Boat and this apparently created some stress in the union by virtue of his having to sleep during the day and with the two small children in the home.
The plaintiff testified that she felt overwhelmed by the responsibility of looking after the children in the home and maintaining the part-time employment in which she was engaged.
The plaintiff characterized the defendant as, in her words, the main provider.
There was testimony by the plaintiff that the defendant had friends from the third shift where he worked and that the defendant and his friends on occasion resorted to the immoderate use of spirits and on occasion substance abuse which created a problem in the union.
The plaintiff testified that on occasion the defendant would return in the afternoon after working the third shift and in an inebriated state.
The plaintiff endeavored to discuss problems between the parties because of the defendant working the third shift and his friends and acquaintances, apparently to no avail. The plaintiff testified that on occasion the defendant would stay away from the home for as much as two to three days.
Apparently notwithstanding the problems, the lines of communication between the plaintiff and the defendant were always open.
The plaintiff suggested counseling for the problems that beset the parties but the defendant, according to her testimony, was not receptive.
The plaintiff had an older child not issue of this marriage whom the parties endeavored to help out during the marriage. This was the plaintiff's son Brian Giordano, now age 24.
In 1998 the defendant went on a three month work assignment in Maine incident to his activities with Electric Boat and on the completion of that project, according to the plaintiff, thereafter did not return CT Page 3317 home.
In 1998 according to the plaintiff, the defendant's compensation annually was in the range of $50-55,000.00. This on the basis of his being in the category of being a first-class painter.
The plaintiff acknowledged that while away on out of state job assignments that the defendant would call by phone and advise as to his status.
The defendant has family relatives in the State of North Carolina.
After the expected date on which the plaintiff expected the defendant to return from the Maine project, the defendant, after several days lapse, called and advised as to his intentions. The plaintiff testified that in her words this caused her to fall apart.
Subsequently the defendant called and spoke with the children.
After the failure of the defendant to return to the home, the plaintiff's automobile was repossessed.
The plaintiff testified that the defendant did not or would not provide a phone number at which he could be reached and an intermediary was necessary to contact him.
The plaintiff testified to the effect that she had to entreat the defendant to provide funds for the welfare of herself and the children. The plaintiff's parents helped out with mortgage payments which were in the amount of $1,200.00 a month as concerns the new home that had been built.
In April of 1999 the plaintiff was served with foreclosure notice. This was seven months after the defendant had left. Fortuitously just prior to the foreclosure being finalized, the plaintiff was able to sell the home and realize a modest equity which during the pendency of these proceedings had been held by counsel for the plaintiff.
After the sale of the home that the parties had built, the plaintiff moved to her present residence. Subsequently the plaintiff filed for bankruptcy in early 2000.
The plaintiff has been at the Old Lyme Daycare position for approximately two years.
As concerns the state of the plaintiff's health, she takes medication CT Page 3318 for depression, has a high cholesterol reading and high blood pressure. She takes Solof for depression and Socore for blood pressure and medication designated as HCT2.
The plaintiff is age 42.
Since the departure of the defendant, his visitation with the children has been on an every other weekend basis, relatively infrequent.
It is the plaintiff's hope that the defendant will have a greater and more frequent relationship with the children.
The plaintiff indicated that she was always receptive to the prospect of reconciliation but was not able to achieve the same.
Seeing that her efforts were futile, the plaintiff initiated the subject petition.
The plaintiff indicated that she was never abusive to the defendant.
The plaintiff acknowledged some responsibility for the breakdown but feels basically that the defendant deserted herself and the children. The plaintiff, although earlier requesting sole custody, indicated to the court that she has no objection to joint custody of the two minor children and indicated that she was desirous of having the court continue the existing order of support which was entered in the magistrate's court in the amount of $170.00 a week.
The plaintiff testified that there was in her opinion a modest support arrearage outstanding at this time of approximately $300.00.
At an earlier point in time incident to the orders of the magistrate's court, there had been a support arrearage in the amount of $4,000.00. This in due course was solved by virtue of a tax intercept.
The plaintiff also requests alimony in the amount of $50.00 a week for a period of seven years.
The plaintiff feels that the two jobs which she has now and which she has had for some time are physically draining and her request for the alimony is for the purpose of looking forward to her being able to do less in the way of outside work and would spend more time with the children.
At the time of the sale of the home that was subject to foreclosure, the sum of approximately $10,000.00 was realized by way of equity and as CT Page 3319 noted above has been held by plaintiff's counsel during the pendency of this proceeding. It is the plaintiff's request that the court grant her the balance of the escrow funds. The plaintiff also requests that the court require the defendant to provide health insurance for the children and in that respect the plaintiff testified that the child Heather is in need of certain dental procedures involving braces for the child's teeth.
The plaintiff requests that the court assign to her 50% of the defendant's pension benefits with Electric Boat.
The plaintiff indicated that basically the defendant has a good relationship with the children except that she was in hopes that the contacts would be more frequent.
The present address of the plaintiff is 170-2 Blood Street in the Town of Lyme.
The selling price of the home that was foreclosed was to the amount of $149,000.00.
From the escrow monies, apparently pursuant to a directive by the magistrate's court, a portion of the funds were released in order that certain daycare costs and charges might be paid.
It was indicated that at the time of plaintiff's petition for bankruptcy that she had credit card debt to the amount of approximately $29,000.00.
The testimony indicated that as a result of the lead poisoning medical problems involving the child Eric that litigation had been resorted to and that there was a life time annuity for the benefit of the child which the child could collect at age 21.
Plaintiff's counsel represented the plaintiff in that lead litigation. No other particulars concerning the settlement were presented to the court in this proceeding.
The child Eric who is treated as learning disabled receives certain benefits from the Town of Lyme incident to his schooling.
The plaintiff acknowledged that during the pendency of the marriage that the defendant did assist in some measure in helping to further the education of her child not issue of this marriage, Brian Giordano.
The plaintiff testified that she endeavored to be understanding with CT Page 3320 regard to the problems in the marriage and was not critical of the defendant. The plaintiff acknowledged that there may have been one or more occasions when she had told the defendant to, in her words, get out.
The plaintiff testified that there was one or more occasions where the defendant with her older son Brian smoked certain legally prohibited material in the basement of the home.
The plaintiff's education extended one year beyond graduating from high school.
As indicated, the plaintiff has worked at Mystic Color Lab, the laundromat in Lyme and the daycare position which she presently holds. In addition, on one occasion, the plaintiff was a companion for an elderly patient in Old Lyme.
The plaintiff receives $7.50 for her hourly rate at the laundromat and $9.00 an hour for her activities at the daycare. The plaintiff now has insurance coverage of her own incident to her daycare position.
The plaintiff testified that the order entered in the magistrate's court was to the amount of $170.00 a week for support, plus $10.00 on a then determined arrearage; mindful of the earlier reference to the $4,000.00 which has been paid and discharged.
At the present time due to her activities and employment, the only day off that the plaintiff has is Saturday. The plaintiff's testimony was to the effect that her family is still continuing to actively help her and the children.
On inquiry by the court, the plaintiff responded that the defendant was immoderate in his use of alcohol and did on occasion resort to substance abuse.
It was the plaintiff's claim that the defendant presently resides with a friend whose name was Marie.
The plaintiff verified that the marriage has irretrievably broken down.
The plaintiff indicated that there were no instances of physical violence during the course of the marriage.
The defendant testified that he presently resides with one Marie Treadway and he pays $60.00 a week in assistance for the rent of the premises that he and the lady occupy. CT Page 3321
The defendant is now back in the classification of being a painter first class at Electric Boat. For a time, in order to preserve his position there, he had worked in janitorial services.
The defendant presently works a 40-hour work week and he has been at Electric Boat for a period of 22 years. Infrequently now, overtime on occasion is available.
The defendant testified that he sees the children twice a month, usually on a Sunday between the hours of 10:00 a.m. and 9:00 p.m., that he has taken the children on outings involving ice skating, bowling, nature walks and matters of like nature and that he speaks with the children by phone at least once a week.
The defendant acknowledged that he has resided with Ms. Treadway for about one year and that prior thereto he had resided in Mystic with Ms. Stratter; that in June of 1998. Ms. Stratter was a co-worker that the defendant has known for a number of years.
The defendant testified that he has a thyroid condition and takes a medication known as Thyroxol incident thereto and acknowledged on occasion some substance indiscretions.
At the present time the defendant's compensation at Electric Boat is $17.02 an hour.
The defendant described his earnings for the year 2000 as being approximately $34,000.00.
His return to being a first class painter was occasioned in July of the year 2000.
The defendant's position with regard to the plaintiff's claim for a portion of his pension is that it should be predicated on the length of the marriage and not his overall length of association with' Electric Boat.
The defendant's guideline worksheet and request is to the effect that the support for the children should be to the amount of $155.00 a week and the defendant denied that there was any accumulated arrearage.
For a period of time, the defendant testified that he had slept in his truck for as long as a month and a half in 1999 after leaving the home.
The defendant has made no request for alimony and is willing to CT Page 3322 maintain medical and dental coverage for the children.
Apparently the defendant makes no request for any items of personalty with regard to any of the contents presently in the residence of the plaintiff.
It is the defendant's position that one of the principal causes of the breakdown was the ill-advised entry into building a new home and that the parties were not prepared for the problems incident thereto nor the financial strains on their budget and that they were overwhelmed financially and that this caused arguments and bickering.
The defendant acknowledged that he had contributed to educational efforts involving Brian Giordano who of course was not his child.
At one point the defendant voluntarily turned in the pickup truck that he had at that time in order to reduce ongoing monthly payments for the parties to try and financially stay afloat.
It was the defendant's position that the plaintiff was eligible to return to work in the banking industry but that, according to his testimony, experiences that the plaintiff had been involved with as concerns co-workers was such that she was not disposed to do so.
The defendant acknowledged that there was no longer any love or affection in the marital union and that he spoke words to that effect to the plaintiff.
The defendant's testimony was to the effect that he realized in 1997 that the marriage was irretrievably lost and broken down and that the plaintiff in his view treated him as being just a source of income and "a paycheck".
The defendant testified that it was customary during the term of the union that he turn over his paycheck to the plaintiff on receipt and kept only a modest amount for weekly expenses.
The defendant acknowledged that on occasion he resorted to spirits and that he was not aware of the substantial credit card debt in the amount of $29,000.00 that the plaintiff had accumulated and did not know for what purpose she had spent it.
The defendant indicated that from and after 1997, and even times prior thereto, that there was no warmth and affection in the union nor any matters of intimacy. CT Page 3323
The defendant's testimony was to the effect that the relationships that he undertook with Ms. Stratter and Ms. Treadway occurred after he had left the marital union.
The child Heather attends the Old Lyme Middle School and apparently is doing well and is in the eighth grade.
The child Eric attends Lyme Consolidated School and is in the fifth grade and as indicated has certain learning disabilities.
The defendant had a child incident to a prior marital union whose name is Steven. That child is now age 23 and an adult and was never part of the home between the plaintiff and the defendant in this union.
The defendant's education extended through graduating from high school only.
The defendant's lament aside from lack of warmth and intimacy was also to the effect that the defendant tried to maintain equilibrium in matters of finances but that the plaintiff would not cooperate with him in sticking to a budget.
From the exhibits and the financial affidavits submitted, the courtmakes the following findings:
From the financial affidavit of the plaintiff, she lists her occupation as a teacher's assistant at the Old Lyme Daycare. Her employment at the Snow White Laundry is also noted. Both facilities are in the Town of Old Lyme. The plaintiff's weekly gross from the Old Lyme Daycare is $360.00; deductions of $74.00 for taxes, etc., for a net of $286.00. In addition, her work at the Snow White Laundry, the gross weekly amount is $48.00; deductions of $4.00 for a net of $44.00, for a total net weekly income of $330.00.
The plaintiff sets forth weekly expenses of $566.50, which includes rent payment, utilities, food, clothing, matters of like nature and something set aside for the orthodontic work required by the older child.
The plaintiff lists debts which apparently were not discharged in the bankruptcy to the following effect: the Old Lyme Daycare, $1,389.50; a debt to the plaintiff's father, Ernest Giordano of $9,000.00 with interest now represented to be approximately $12,000.00 and taxes to the Town of Old Lyme in the amount of $1,345.82.
There is no real estate shown on the plaintiff's financial affidavit CT Page 3324 mindful of the fact that the home earlier occupied by the parties had been foreclosed.
The plaintiff shows a 1996 Ford Windstar motor vehicle valued at $13,000.00 with a zero equity because of the loan balance; $100.00 in the Essex Savings Bank checking account.
The only other asset reflected on her financial statement is the $10,000.00 escrow funds held by her counsel since the sale of the property.
The defendant's financial affidavit reflects his occupation on the affidavit itself as janitor. In fact he is now a first class painter at Electric Boat, with an hourly wage of $17.02; gross weekly wage, $660.80, deductions for taxes, medical, dental and union $200.90 for a net of $460.01. Weekly expenses shown as $524.13.
The defendant reflects the following debts: a dental bill, $495.00; $1,800.00 owed to counsel; various doctor bills, $100.00 and Metropolitan Group, $150.00 for a total of $2,545.00.
The defendant indicates no ownership of real estate, shows a 1995 Nissan pickup motor vehicle with a zero equity. More is owed on the vehicle than its value. Nothing is shown as concerns personal property. Nothing in any bank or checking account. No insurance. What the value may be of the defendant's prospective pension with Electric Boat after 22 years is not noted on his affidavit.
The only other documents offered as exhibits were Plaintiff's Exhibit A, a sheet reflecting apparently payments made by the defendant with regard to either the real estate formally owned or an automobile.
Plaintiff's Exhibit B is a statement from Old Lyme Daycare, Inc. to the plaintiff for care of the children Eric and Heather amounting to $1,389.50. It is the court's understanding that this sum has been paid by allowance from the magistrate's court from the escrow monies held by plaintiff's counsel. No other exhibits were presented to the court. No tax returns were presented to the court. No document, letter or statement was presented to the court establishing the status or value of the defendant's pension benefits at Electric Boat, General Dynamics where he has been employed for 22 years.
No appearance was ever filed by the Office of the Attorney General Welfare.
There were no written medical statements offered nor testimony from any CT Page 3325 medical provider concerning the child Eric and his present condition.
 Discussion
This is a marital union of almost 16 years duration.
There are two children issue of this marriage; the child Heather now age 13 and the child Erie now age 11.
The defendant has been employed at Electric Boat General Dynamics for 22 years. His present position is that of a first class painter.
The health problems as concerns the minor child Eric are noted above and the child's educational status and state of health touched on, on the basis of the testimony of the plaintiff and the defendant.
Both of the parties to this petition have apparently always been employed at various tasks and jobs.
The decision to build a new home undoubtedly created problems and financial stresses which in some measure probably contributed to the breakdown of the marriage. As noted the plaintiff's family did and has helped out with matters of finances.
The plaintiff apparently was willing to participate in counseling. The defendant was not receptive to that idea.
The plaintiff has medical problems as touched on. The plaintiff being affected by depression, high blood pressure and a high cholesterol reading for which she takes medication.
There have been proceedings conducted in the magistrate's court with regard to the parties to this action as noted above.
There were apparently no instances of physical violence and no credible testimony with regard to problems pertaining to the use in excess of spirits.
Even though, according to his testimony, the defendant's relationships with Stratter and Treadway allegedly occurred after he had left the home on the completion of his tour for Electric Boat in Maine, that would appear to be a substantial factor in the breakdown of the marriage. The plaintiff having indicated that she was always amenable to the prospects of reconciliation.
Neither of the parties have education of any consequence that extends CT Page 3326 beyond graduating from high school.
The court notes the limited contacts between the defendant and the children but hopefully that may be improved in the passage of time.
 The Law
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-82 regarding alimony, § 46b-62 regarding attorney's fees and §§ 46b-55, 46b-83 and 46b-84 as concerns support.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each of the parties and the estate and needs of the parties.
The court has considered the standards of living of the parties.
As concerns the minor child Eric, the court has considered the child's age, the medical problems with which he is apparently beset as a result of the lead poisoning and the need for special care, help, guidance and instruction in years to come.
The court has considered the relationship between the defendant and the chiidren, the length and intimacy or lack thereof as concerns that association and the problems that beset both of the children.
The court has considered the respective financial positions of the plaintiff and the defendant, their prospects for future income and opportunities.
The court has considered the issue of fault.
The Court enters the following orders.
The parties shall share joint legal custody of the two minor children, Heather Elizabeth Mitchell and Eric Steven Mitchell.
The plaintiff mother shall be the primary custodial parent. CT Page 3327
The defendant father shall have reasonable rights of visitation including but not limited to visitation with the children every other Sunday between the hours of 9:00 a.m. and 4:00 p.m. and on holidays as may be agreed between the parties.
The defendant shall pay to the plaintiff support for the minor children in the amount of $165.00 a week.
Support may be by an immediate wage withholding with payment through the State Disbursement Unit unless there is an agreement in writing between the parties for a contingent wage execution.
The defendant shall maintain medical and dental coverage for the two children as available to him through his place of employment.
Any uncovered medical or dental expenses shall be apportioned as follows: 60% of said cost to the plaintiff mother and 40% to the defendant father.
In the event that it is determined on consultation with the magistrate's court that there is any outstanding arrearage as claimed by the plaintiff, the defendant shall pay the same at the rate of $10.00 a week until the same is liquidated and paid off.
As concerns personal property: the defendant shall be entitled to his personal effects, clothing, jewelry and personal items of like nature from the home and residence of the plaintiff and to secure the same within a period of 30 days.
In all other respects, the plaintiff may retain the furnishings and contents of the home presently rented and occupied by the plaintiff and the two children as her sole and separate property.
The defendant shall pay to the plaintiff as periodic alimony the sum of $50.00 a week for a period of seven years. Said alimony to be non-modifiable as to term but not as to the principal amount.
From the escrow funds presently held by plaintiff's counsel, the defendant may have and receive the sum of $2,500.00. From the remainder of said fund, the debt and obligation shown to the Old Lyme Daycare facility and to the Old Lyme Tax Collector shall be paid by the plaintiff. After said payment to the aforementioned creditors, the remainder of the escrow account shall remain the sole and separate property of the plaintiff CT Page 3328
The defendant shall assist the plaintiff if necessary or required as concerns medical or dental coverage for the plaintiff under the provisions of COBRA and the coverage and benefits which the defendant presently has incident to his employment for the three year period allowed but at the plaintiff's separate cost and expense.
The defendant shall transfer by way of a Qualified Domestic Relations Order in favor of the plaintiff 35% of his current retirement pension benefits with General Dynamics, his employer.
The defendant shall be entitled to take both children as exemptions for tax purposes.
Each party shall be responsible for their own attorney's fees.
The plaintiff may retain the modest amount in the Essex Savings Bank checking account and retain title to the 1996 Ford Windstar presently standing in her name.
The defendant may retain title to the 1995 Nissan pickup motor vehicle and be responsible for any loan balance due thereon.
The court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried pursuant to the provisions of the statute.
Austin, JTR